**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| *Plaintiff,* | : | |
| | : | |
| v. | : | Criminal No. 3:26-cr-64-1-OAW |
| | : | |
| MICHAEL JOSEPH MEADE, *et al.,* | : | |
| *Defendants.* | : | |

## ORDER REGARDING STATUS REPORT

**THIS ACTION** is before the court upon Defendant Michael Joseph Meade's Status Report. ECF No. 69. The court presumes Mr. Meade's and Attorney Daniel Erwin's familiarity with the relevant procedural history,[1] and recounts it only as necessary in articulating why it declines to schedule "a brief conference call" which "counsel would not oppose," but does not request, despite the deadline of **June 18, 2026,** for any motion to continue jury selection as presently scheduled for **July 16, 2026**. *See* ECF Nos. 68, 69.

## I.    RELEVANT PROCEDURAL HISTORY

Mr. Meade is charged with tax evasion and various other tax crimes, in violation of 26 U.S.C. §§ 7201, 7203, 7212(a), and 7206(2), and 18 U.S.C. §§ 2 and 371. ECF No. 1. Upon learning that he "wants to represent himself," the court referred Mr. Meade to a United States Magistrate Judge for a hearing pursuant to *Faretta v. California*, 422 U.S. 806 (1975). ECF Nos. 27, 30. *Faretta* requires the court to: **(i)** ensure that Mr. Meade

---

[1] At Mr. Meade's initial appearance, on April 22, 2026, The Honorable Maria E. Garcia appointed Attorney Erwin as Mr. Meade's standby counsel until such time as the court could determine whether Mr. Meade "will be permitted to represent himself." ECF No. 12. Attorney Erwin continues to serve in that capacity, and has made several filings on Mr. Meade's behalf. *See, e.g.*, ECF Nos. 53, 54, 59, 69.

"knowingly and intelligently forgo[es]" the right to counsel by making him "aware of the dangers and disadvantages of self-representation," and **(ii)** establish a record that he "knows what he is doing and his choice is made with eyes open."  422 U.S. at 835–36 (internal citations and quotation marks omitted).  Only then may Mr. Meade proceed *pro se* in this case.  *Id*.

The Honorable United States Magistrate Judge S. Dave Vatti promptly convened a *Faretta* hearing on May 8, 2026, *see* ECF No. 42, at which Mr. Meade "declined to engage in any colloquy with the [c]ourt," *see* ECF No. 44, for thirty minutes, *see* ECF No. 47.  Judge Vatti determined that His Honor could not "make a finding of [Mr. Meade's] knowing and intelligent waiver of [his] right to counsel" and continued the hearing to May 22.  *See* ECF No. 44 (citing *Faretta*, 422 U.S. 806).

At the May 22 hearing, Judge Vatti explained to Mr. Meade that his cooperation was required to make the necessary findings under *Faretta*.  ECF No. 56; *see also* 422 U.S. at 835–36.  However, Mr. Meade "refused to answer" any of Judge Vatti's questions; *again*, he "remained silent," "made no eye contact," and "made no facial expressions," *see* ECF No. 56, for seventeen minutes, *see* ECF No. 55.  Judge Vatti continued the hearing to June 1 to "give" Mr. Meade more "time to reconsider" his lack of engagement.  ECF No. 56.  When Mr. Meade repeated such behavior for forty-three minutes on June 1, Judge Vatti continued the hearing to June 9.[2]  *See* ECF Nos. 60, 62.

Judge Vatti "described in detail the benefits of having counsel," the "disadvantages of self-representation," and "the specific questions that comprise the *Faretta* inquiry" at the June 9 hearing.  ECF No. 64.  His Honor "provided Mr. Meade and [Attorney Erwin]

---

[2] Notwithstanding, Judge Vatti found that that Mr. Meade "is intelligent, articulate and understands English," and "heard the Court's explanation of the purpose of a *Faretta* hearing."  ECF No. 62.

in writing an explanation of the purpose of the *Faretta* hearing, the benefits of having counsel and downsides of self-representations and the questions the [c]ourt intended to ask him." *Id*.  The court also explained that it "did not intend to stand in the way of Mr. Meade's self-representation if that is what he wished to do so long as it had the *Faretta* discussion with him and could make a finding of knowing and intelligent waiver." *Id*.  Still, Mr. Meade "refused to answer" the court's questions, "refused to make any eye contact," and "made no facial expressions whatsoever."  *Id*.  After forty minutes, Judge Vatti continued the hearing a final time, to June 17.  *See* ECF Nos. 63, 64.

Despite his silence before Judge Vatti, Mr. Meade has represented—at his initial appearance before The Honorable United States Magistrate Judge Maria E. Garcia, and across several filings submitted by counsel—that his "silence is his intended form of protest," *see* ECF No. 53, at 2, specifically against the "jurisdiction and authority" of the court, *see* ECF No. 12, and that he will continue, as he apparently sees it, "exercising his constitutional right to silence," *see* ECF No. 59, at 1.  Indeed, **he would rather remain detained** than acknowledge the court's authority to set "minimal conditions necessary to assure his appearance and the safety of the community" if released pending trial.  ECF No. 17.

Meanwhile, the time within which Mr. Meade's trial must commence (pursuant to the Speedy Trial Act) has continued to run.  *See* 18 U.S.C. § 3161.

As the parties are aware, *see* ECF Nos. 43, 51, 58, 66, 68, the Speedy Trial Act requires a criminal trial to commence within seventy days of an indictment or arraignment, whichever occurs later.  *See* 18 U.S.C. § 3161(c)(1).  It "is intended both to protect the defendant from undue delay in his or her trial and to benefit society by ensuring a quick

3

resolution." *United States v. Kelly*, 45 F.3d 45, 47 (2d Cir. 1995).  Nevertheless, any party may propose a trial date beyond the seventy-day period and move the court to exclude the resulting delay from its speedy trial computation.  *Id*. (citing 18 U.S.C. § 3161(h)).  ***The court repeatedly has brought this to the attention of Mr. Meade and his codefendant, Chet Lee West.***  *See* ECF Nos.  43, 51, 58, 66, 68.

Until the government, Mr. Meade, or Mr. West successfully moves the court for such a continuance "on the basis . . . that the ends of justice served by [a continuance] outweigh the best interest of the public and the defendant in a speedy trial," *see* 18 U.S.C. § 3161(h)(7)(A), the Speedy Trial Act requires that this case proceed to trial on or before **July 16, 2026,**[3] *see* ECF No. 42.  Consequently, the court has ordered the parties to attend a discovery conference before Judge Vatti following the conclusion of Mr. Meade's *Faretta* hearing, *see* ECF Nos. 51, 68, and, separately, that any motions to continue the current trial date be submitted on or before **June 18, 2026,** *see* ECF Nos. 66, 68, so that the court may carefully consider the merits of any such motion, and so the Jury Clerk may have adequate time to summon a sufficient pool of qualified and available potential jurors.

---

[3] The Speedy Trial Act excludes "[a]ny period of delay resulting from other proceedings concerning the defendant, including but not limited to . . . delay resulting from any pretrial motion, from the filing of the motion through the conclusion of the hearing on, or other prompt disposition of, such motion," or "delay reasonably attributable to any period, not to exceed thirty days, during which any proceeding concerning the defendant is actually under advisement by the court."  18 U.S.C. §§ 3161(h)(1)(A), (h)(1)(H); *see also United States v. Akhavan*, 523 F. Supp. 3d 443, 447 (S.D.N.Y. 2021), *aff'd sub nom*. *United States v. Patterson*, No. 21-1678-CR, 2022 WL 17825627 (2d Cir. Dec. 21, 2022).  Accordingly, the time spent completing Mr. Meade's *Faretta* hearing would be excluded from any speedy trial calculation, such that a requested continuance beyond July 16 would not *necessarily* exceed the seventy-day limit.  *Id*.  Should any party seek to continue the trial under such provision of the Speedy Trial Act, *see* 18 U.S.C. §§ 3161(h)(1), such party may file a motion to do so containing reasoning and authority, *but see* 18 U.S.C. § 3161(h)(7)(A).  Notwithstanding, based on Mr. Meade's representations, the absence of any motion to continue the trial, and the impending deadline for any party to move the court to continue trial, *see* ECF No. 68, the court declines any *sua sponte* continuance of trial or of the pretrial deadlines.

## II.   MR. MEADE'S STATUS REPORT

Ahead of the upcoming fifth and final *Faretta* hearing, *see* ECF No. 64, Attorney Erwin filed a status report "to aid the court in anticipating [the] scheduling needs" of this case, *see* ECF No. 69, at 1.  Although it does not affirmatively present any particular requests, it implies that the court, *sua sponte*, should address "some of the paradoxical and uncertain vagaries of this case."  *Id*.

For the reasons that follow, the court declines to do so.

### A.  Hypothetical Appeal

Attorney Erwin represents that he would appeal any order by Judge Vatti requiring Mr. Meade to proceed with counsel, but that such counsel would be unable "to prepare for an immediate trial while . . . pursuing an appeal on the very issue of representation." ECF No. 69, at 2.  The court has set jury selection for July 16 in accordance with the Speedy Trial Act, along with corresponding trial deadlines which would allow the court to carefully consider any pretrial motions.  ECF No. 68.  However, for more than one month, Mr. Meade has been free to move to continue his trial, *see* ECF No. 43, and he remains free to do so now, *see* ECF No. 68, whether to prepare for trial, to further litigate the appointment of counsel, or for any other permissible reason.  ***Mr. Meade even acknowledges this in the status report.***  *See* ECF No. 69, at 3 (indicating that the parties "have the power to make such motion").

Accordingly, the court declines to alter its deadlines *sua sponte*.

### B. *Faretta* Hearing Delays

Mr. Meade argues that "the *Faretta* hearing should have concluded several weeks ago," and that the "delay" is "cutting into [his]—and possibly Mr. West's—speedy trial and preparation time."  ECF No. 69, at 2.

"[D]istrict courts routinely direct defendants considering self-representation to spend some time thinking about the risks inherent in that course."  *Jackson v. Perez*, No. 15-CV-1403(EK)(LB), 2020 WL 7123162, at *10 (E.D.N.Y. Dec. 4, 2020).  However, the several *Faretta* hearings in this case have been atypical in terms of their time commitment due to Mr. Meade's repeated lack of engagement.  *Id*.  Typically, a defendant is willing to engage in an "extensive colloquy on the record," so the presiding judge can determine whether that defendant "understands the nature of the charges against him . . . and the maximum potential penalties if he is convicted of those charges, understands the benefits of having counsel represent him and the risks/disadvantages of representing himself, and that he has the requisite mental capacity to comprehend the consequences of relinquishing the right to have appointed counsel."  ECF No. 48 (noting that Mr. West did so at his sole *Faretta* hearing, on May 8).  Mr. Meade has chosen a different approach.  *See* ECF Nos. 44, 56, 62, 64.

As such, the pretrial deadlines remain appropriate in light of the ongoing *Faretta* determination and the requirements of the Speedy Trial Act.  18 U.S.C. § 3161(c)(1).  The status report contains no authority holding that "a judge must stop all proceedings and decide immediately whether to grant a request to proceed *pro se*, and this [c]ourt is aware of none."  *Jackson*, 2020 WL 7123162, at *10 (acknowledging also that "Second Circuit case law . . . supports the notion that self-representation need not begin

instantaneously"). "*Faretta* does not require it," either. *Id*. As Judge Vatti repeatedly has explained to Mr. Meade, *see* ECF Nos. 44, 56, 62, 64, *Faretta* "requires the defendant's decision [to proceed *pro se*] to be knowing, voluntary, and unequivocal," *see Jackson,* 2020 WL 7123162, at *10.

Furthermore, Judge Vatti does not seem to have been persuaded that Mr. Meade's silence at the *Faretta* hearings is a valid form of protest against the court's jurisdiction and authority. *See generally*, ECF Nos. 12; 17; 53, at 2; 59, at 1. And again, the status report contains no authority to support any such contention.

### C. Status Conference

Attorney Erwin represents that he (and, presumably, Mr. Meade) "would not oppose a brief conference call" with the court, though without affirmatively requesting or moving for one, insofar as the purpose is "to aid the court in anticipating scheduling needs." ECF No. 69, at 1.

The parties and counsel are free to meet and confer, at their convenience. *See* Fed. R. Crim. P. 16.1. And until the parties have attended the discovery conference before Judge Vatti, which was ordered by the undersigned, *see* ECF Nos. 51 (citing Fed. R. Crim. P. 17.1), 68 (requiring the parties to confer "in good faith"), the court does not find that any additional conferences would be productive while the parties determine whether they will have enough time to adequately prepare for trial as currently scheduled. ECF No. 51. This finding is firmly supported by the record before the undersigned, as described in this order and as is evidenced throughout the docket.

### III.    **CONCLUSION**

Whereas Mr. Meade and Attorney Erwin might be concerned about their ability to adequately and competently prepare for trial, *see* ECF No. 69, at 2 (noting "[i]t would not be workable, procedurally or practically, to prepare for an immediate trial . . . ."), the court reminds them of the **June 18** deadline to move for a continuance of trial, *see* ECF No. 68, which presently is as much in the control of defense counsel as the decision to ignore Judge Vatti across four separate *Faretta* hearings has remained in the control of Mr. Meade, *see* ECF Nos. 44, 56, 62, 64.  And the current pretrial deadlines are the result of the ongoing defense decision (fully in their control) not to propose an alternative trial schedule consistent with the Speedy Trial Act.  *See* ECF Nos. 43, 51, 58, 66, 68.

The court intends for Mr. Meade to carefully consider each of these concerns and the impact of his ongoing behavior.  After all, defense counsel cites no law which supports his suggestion that a defendant can invoke his Fifth Amendment right to remain silent at a *Faretta* hearing; or, for that matter, during court inquiries as to how the defendant pleads, whether he elects to have a trial before a judge or a jury, whether he understands his right to testify (or to decline to testify), whether he wishes to select a particular juror, or whether, at a *Frye* hearing, he understands any government offer at a resolution of this case short of trial, and whether he understands his exposure to incarceration if he rejects any such offer.  Furthermore, defense counsel fails to explain why Defendant's refusal to comply with any court instruction to respond to such questions should not be deemed "contempt," *see* ECF No. 53, at 7, of even the avoidable civil variety,  *see, e.g., International Union, United Mine Workers of America v. Bagwell*, 512 U.S. 821, 831 (1994).  Indeed, the court must be permitted to carry out its duty to advance this case.

8

Accordingly, Attorney Erwin **SHALL** present Mr. Meade with a printed copy of this order and also read it aloud to him in its entirety during the *Faretta* hearing on June 17, on the record in open court.  Before doing so, Attorney Erwin **SHALL** inform Judge Vatti of this order and defer to His Honor's determination as to when during the hearing this order should be read to Mr. Meade.

To be clear, this order neither requires nor discourages Mr. Meade's filing of any motion or appeal hypothetically referenced in his status report.  *See* ECF No. 69. Similarly, it does not prejudge any such motions or appeals, nor judge whatever beliefs might be motivating Mr. Meade's "protest" in this case. *See generally*, ECF Nos. 12; 17; 53, at 2; 59, at 1.  It merely is intended to encourage Mr. Meade to weigh his available options, and to assess the consequences of his approach to this case.

Once more, the court advises Mr. Meade that "the right to self-representation is not without limits," including limits imposed by "'the rules of procedure and courtroom protocol.'" *Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008) (quoting *McKaskle v. Wiggins* 465 U.S. 168, 173, (1984)); *see also Faretta,* 422 U.S. at 834 n. 46.

Finally, the court thanks Judge Vatti for His Honor's time and attention to this case, and Attorney Erwin for his public service.

**IT IS SO ORDERED** at Hartford, Connecticut, on this 17th day of June, 2026.

/s/
OMAR A. WILLIAMS
UNITED STATES DISTRICT JUDGE

9